COX HEALTH SYSTEMS, f/k/a Lester E. Cox Medical Systems, a Missouri Not–For–Profit Corporation, Respondent,

v.

DIVISION OF WORKERS' COMPENSATION OF the DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS, Appellant.

No. WD 65530.

Missouri Court of Appeals, Western District.

May 9, 2006.

Jason N. Shaffer, Springfield, MO, for Respondent.

Jeremiah W. (Jay) Nixon, Atty. Gen., Brett W. Berri, Assistant Attorney General, Jefferson City, MO, for Appellant.

Before BRECKENRIDGE, P.J., and HOWARD and HOLLIGER, JJ.

VICTOR C. HOWARD, Judge.

The Division of Workers' Compensation ("Division") appeals from a writ of mandamus ordering it to consider certain medical fee dispute applications filed with the Division by Cox Health Systems ("Cox"). The Division's sole point on appeal is that the trial court erred in issuing its writ of mandamus ordering the Division to consider Cox's medical fee dispute applications identified in trial exhibits A, B, and C because its judgment erroneously declares and applies the law in that section 287.140 [1] and 8 CSR 50–2.030 establish procedural requirements—including time limitations—for applications to be submitted, and the Division properly rejected Cox's applications, which were untimely.

We affirm.

## Factual and Procedural Background

This case is a dispute over the operation of sections 287.140 and 8 CSR 50–2.030, which govern medical fee disputes associated with treatments compensable under the workers' compensation system. Under section 287.140, the Division is granted jurisdiction to hear all disputes over compensable medical charges, and health care providers are bound by the Division's determination as to the reasonableness of those charges. The statute also requires the Division to promulgate rules governing the procedure for hearing medical fee disputes, and the Division has done so at 8 CSR 50–2.030.

The parties state in their joint stipulation of facts that health care providers that have been authorized to provide services to an injured worker can avail themselves of the Division's medical fee dispute

hearing processes under one of two circumstances: if either (1) bills for services have not been paid, or (2) the health care provider disputes the amount paid for services by an employer or its insurance carrier. The Division refers to disputes in the former category as "applications for direct payment." Properly filed applications for direct payment are made a part of and are heard with the underlying workers' compensation case. The Division refers to disputes in the latter category as "applications for payment of additional reimbursement of medical fees." Properly filed applications for payment of additional reimbursement of medical fees are heard separately from the underlying workers' compensation case, and the employee is not a party to the proceeding.

The Division rejected numerous medical fee dispute applications filed with the Division by Cox. Cox then filed a petition for a writ of mandamus, prohibition and/or declaratory judgment with the trial court, alleging that the Division had a ministerial duty to accept and adjudicate all its medical fee disputes without regard to whether the underlying workers' compensation case was open or closed.

Cox submitted with its petition, and the trial court admitted into the trial record, three voluminous appendices consisting of copies of returned applications falling in both of the categories described above (Exhibits A, B, and C). Four examples, denominated in counts I, II, III, and IV in Cox's petition were stipulated to be representative of those contained in the appendices: [2]

1. The M.A. application, in which an application for payment of additional reim-

---

**1.** All statutory references are to RSMo 2000. The abbreviation "CSR" refers to the Code of State Regulations, and all references to regulations are to those in effect in 2000.

**2.** It is not clear which specific exhibit each of the provided examples represents, and Exhibits A, B, and C have not been submitted in the record on appeal.

bursement of medical fees, alleging that no payment had been made, was returned to Cox because the underlying workers' compensation case had been settled/dismissed.

2. The M.B. application, in which an application for payment of additional reimbursement of medical fees, alleging that only partial payment had been made, was returned to Cox because the underlying workers' compensation case had been closed.

3. The C.B. application, in which an application for payment of additional reimbursement of medical fees, alleging that only partial payment had been made, was returned to Cox because the underlying workers' compensation case was closed and the statute of limitations had run; and

4. The D.M. application, in which an application for direct payment, alleging that no payment had been made, was returned to Cox because the underlying workers' compensation case was settled/dismissed.

As indicated by the above examples, and agreed to by the parties in their joint stipulation of facts, the Division has returned Cox's applications whenever (1) the employee reached a settlement with his or her employer and/or its insurer in the workers' compensation claim prior to Cox's application; (2) the employee's workers' compensation claim was dismissed or otherwise administratively closed prior to Cox's application; and (3) the application exceeded the statute of limitations.[3]

The trial court found for Cox on the issue of mandamus and issued its writ on May 13, 2005. It denied relief in the form of prohibition, and dismissed Count V (declaratory judgment) as moot. The court

specifically found that the Division "has a ministerial duty to accept the Medical Fee Dispute Applications identified in trial Exhibits A, B and C and [that] the health care provider properly filed the Medical Fee Dispute Applications contained in Exhibits A, B and C." It ordered the Division "to consider those Medical Fee Dispute Applications filed as of the stamped date contained on said documents." The Division appeals.

## Standard of Review

■ "Generally, mandamus is reviewed on appeal as any other non-jury civil matter." *Lewis v. Bellefontaine Habilitation Ctr.*, 122 S.W.3d 105, 107–08 (Mo.App. W.D.2003). We will sustain the judgment of the trial court "unless no substantial evidence exists to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Id.* at 108. "Questions of law are matters reserved for de novo review by the appellate court, and we therefore give no deference to the trial court's judgment in such matters." *Commerce Bank, N.A. v. Blasdel*, 141 S.W.3d 434, 442 (Mo.App. W.D. 2004) (quoting *H & B Masonry Co., Inc. v. Davis*, 32 S.W.3d 120, 124 (Mo.App. E.D. 2000)).

## Discussion

■ The Division's sole point on appeal is that the trial court erred in issuing its writ of mandamus ordering the Division to consider Cox's medical fee dispute applications identified in trial exhibits A, B, and C because its judgment erroneously declares and applies the law in that section 287.140 and 8 CSR 50–2.030 establish procedural requirements—including time limita-

---

**3.** Judy Engelbrecht, a Division employee, stated in her deposition that she was told to stop rejecting medical fee dispute applications on statute of limitations grounds. Why she was told to do this, and what the Division's current policy is regarding this matter, is not clear.

tions—for applications to be submitted, and the Division properly rejected Cox's applications, which were untimely.

■ "Mandamus is a discretionary writ, and there is no right to have the writ issued." *State ex rel. Mo. Growth Ass'n v. State Tax Comm'n,* 998 S.W.2d 786, 788 (Mo. banc 1999). "The purpose of the writ is to execute, not adjudicate." *Id.* "Mandamus will lie only upon an unequivocal showing that a public official failed to perform a ministerial duty imposed by law. To be entitled to relief, the applicant must show a clear, unequivocal, specific, and positive right to have performed the act demanded." *State ex rel. Nixon v. Kinder,* 129 S.W.3d 5, 7 (Mo.App. W.D.2003) (citations omitted). "[M]andamus cannot be used to control the judgment or discretion of a public official...." *State ex rel. Bd. of Health Ctr. Trs. of Clay County v. County Comm'n of Clay County,* 896 S.W.2d 627, 631 (Mo. banc 1995).

Provisions concerning the Division's jurisdiction over medical fee disputes are found throughout section 287.140 and 8 CSR 50–2.030. They are as follows:

Pursuant to section 287.140.3, "[t]he division or the commission ... shall ... have jurisdiction to hear and determine all disputes as to such [medical fee] charges."

Section 287.140.4 provides:

The division shall, by regulation, establish methods to resolve disputes concerning the reasonableness of medical charges, services, or aids. This regulation shall govern resolution of disputes between employers and medical providers over fees charged, whether or not paid, and shall be in lieu of any other administrative procedure under this chapter. The employee shall not be a party to a dispute over medical charges, nor shall the employee's recovery in any way be jeopardized because of such dispute.

Section 287.140.13(5) provides:

If an employer or insurer fails to make a payment for authorized services provided to the employee by a hospital, physician or health care provider pursuant to this chapter, the hospital, physician or other health care provider may proceed pursuant to subsection 4 of this section with a dispute against the employer or insurer for any fees or other charges for services provided.

In accordance with section 287.140.4, the Division has established methods to resolve medical fee disputes, which are found in 8 CSR 50–2.030.[4] The first section of 8 CSR 50–2.030 that describes such procedures provides as follows:

(1) Procedures pertaining to applications for payment of additional reimbursements.

(A) If an employer or insurer disputes the reasonableness of a medical fee or charge, the employer or insurer shall notify the health care provider in writing that the medical charge is being disputed and shall explain the basis for the dispute. The employer or insurer may tender partial payment and the health care provider may accept payment of the amount tendered without prejudice to the filing of an application for payment of additional reimbursements of medical fees. Upon receiving the written notice of the dispute, the health care provider shall contact the insurer or employer to attempt to resolve the dispute.

---

**4.** This section provides as follows: "PURPOSE: This rule sets forth the Division of Workers' Compensation administrative procedures available to employers, insurance carriers and health care providers to resolve disputes concerning charges for services, in accordance with section 287.140, RSMo."

If the negotiation is unsuccessful and more than ninety (90) days have elapsed since the date of first billing, the health care provider may file an application for payment of additional reimbursement of medical fees with the division.

Eight CSR 50–2.030(1)(O) provides:

If the health care provider filed an application for payment of additional reimbursement of medical fees prior to the underlying workers' compensation case is [sic] dismissed or settlement is approved by the administrative law judge or legal advisor, or an award entered by the administrative law judge, or within the applicable period of limitations, the division retains jurisdiction to hear the dispute. If the parties file an application for payment of additional reimbursement of medical fees after the underlying workers' compensation case is dismissed or settlement is approved by the administrative law judge or legal advisor, or an award is entered by the administrative law judge, or the applicable period of limitations has expired, the division does not have jurisdiction to accept the application. The division shall notify the parties regarding its lack of jurisdiction to hear the dispute.

Last, 8 CSR 50–2.030(2)(I) provides that "[t]he division shall lose jurisdiction to hear medical fee disputes relating to direct payments after the underlying workers' compensation case is dismissed or settlement is approved by the administrative law judge or legal advisor or an award is entered by the administrative law judge."

The Division rejected Cox's applications without a hearing or notice to Cox. As previously mentioned, one basis for rejection was that the underlying workers' compensation case was closed. The Division contends that the "deadlines" provided for in the rule, 8 CSR 50–2.030(1)(O) and (2)(I), serve as notice to health care providers that medical fee disputes will not be accepted by the Division after the underlying workers' compensation case is closed.

Cox asserts it is entitled to file and submit claims and medical fee dispute applications, and that they should be heard, determined and resolved in accordance with procedures set forth in section 287.140, regardless of the actions of the employee, because any such claim or dispute is solely between the health care provider and the employer and/or its insurer, and the employee is not a party to the dispute. The actions or conduct of the employee, a non-party to the medical fee dispute, should not affect the ability of the health care provider to pursue rights and claims afforded to it by statute, Cox contends. Cox asserts that when faced with the deprivation of property (accounts receivable), it did not receive notice and opportunity for hearing as due process requires. Thus, Cox asserts, the actions of the Division are contrary to law and unconstitutional, and the judgment of the trial court in granting the writ of mandamus was appropriate.

Pursuant to 8 CSR 50–2.030(1)(A), a health care provider must wait ninety days after the date of its first billing of the employer or insurer before filing a medical fee dispute application with the Division. During this ninety days, the underlying workers' compensation case between the employee and the employer and/or insurer may have settled, been dismissed, or otherwise been administratively closed. Under these circumstances, 8 CSR 50–2.030(1)(O) and 8 CSR 50–2.030(2)(I) provide that the Division loses jurisdiction to hear the medical fee dispute, leaving the health care provider with no recourse, due to circumstances beyond its control and with no notice or opportunity to be heard. We agree with Cox that 8 CSR 50–2.030(1)(O) and 8 CSR 50–2.030(2)(I) do

not fairly carry out the mandate of section 287.140, but instead arbitrarily and impermissibly cut off jurisdiction when the workers' compensation case is closed.

 The test of whether an administrative agency rule is reasonable is whether the regulation bears "a rational relationship to a legitimate state interest." *Psychiatric Healthcare Corp. of Mo. v. Dep't of Soc. Servs.*, 100 S.W.3d 891, 900 (Mo.App. W.D.2003) (citation omitted). "If so, it is neither arbitrary, capricious, nor unreasonable." *Id.*

The Division contends it has two legitimate interests that support its rule. First, the Division contends it has an interest in providing finality to injured employees, employers, and their insurers. The Division argues that those parties have a legitimate expectation that when they reach a settlement or when their cases are finally adjudicated by a Division ALJ, no third party can enter into the proceedings and attempt to have their liabilities adjusted. The Division contends that its rule provides a procedure that balances this interest in finality with the interest of health care providers in having their medical fee dispute applications heard. Second, the Division contends it has a legitimate interest in not imposing an administrative burden on itself, which the Division contends would occur if it were required to open a new file to consider a health care provider's medical fee dispute applications following the closing of the underlying workers' compensation case.

We find that neither of these interests justify the regulations providing that the Division loses jurisdiction over medical fee disputes when the workers' compensation case is closed. While the Division's interest in providing finality to injured employees, employers, and their insurers is legitimate, it may not advance this interest at the expense of the health care providers'

right to have their day in court. Contrary to the Division's contention, a health care provider's filing of a medical fee dispute application after the underlying workers' compensation case is closed is not an attempt to have the parties' previously determined liabilities adjusted. Rather, it is an attempt by a health care provider to recover its fees from the employer or insurer. In fact, section 287.140.4 specifically provides that an employee is not a party to a medical fee dispute under that section, and that the employee's recovery may not in any way be jeopardized because of such a dispute.

We find that rather than striking a balance between the interest in finality and the health care providers' interests, as it claims to be doing, the Division has impermissibly foreclosed the health care providers' due process rights in the interest of ensuring finality. The Due Process Clause requires that "a person facing a deprivation of property receive notice and an opportunity for hearing appropriate to the nature of the case." *Belton v. Bd. of Police Comm'rs of Kansas City*, 708 S.W.2d 131, 137 (Mo. banc 1986). A health care provider does not receive notice or opportunity for hearing before the deprivation of property in this case.

Moreover, we find that the administrative "burden" the Division would incur by having to open a new file is minor compared to the effect of this statutory scheme on health care providers, whose property (accounts receivable) may be taken without benefit of legal process.

### Conclusion

We hold that the Division has a statutory duty to permit the filing of the medical fee dispute applications at issue in this case under section 287.140.4. The Division may not reject the applications, without a

hearing, on the grounds that the statute of limitations has run or that the underlying workers' compensation case has settled, dismissed, or otherwise been administratively closed.

The judgment of the trial court is affirmed.

BRECKENRIDGE, P.J., and HOLLIGER, J., concur.