Craig Clay CHASTAIN, Appellant,

v.

KANSAS CITY MISSOURI CITY CLERK, et al., Respondents.

No. WD 73634.

Missouri Court of Appeals, Western District.

March 18, 2011.

---

Craig Clay Chastain, Kansas City, MO, pro se.

Galen P. Beaufort, Kansas City, MO, for respondent.

Before: JOSEPH M. ELLIS, P.J., and THOMAS H. NEWTON and ALOK AHUJA, JJ.

ALOK AHUJA, Judge.

Craig Clay Chastain appeals from the Judgment of the Circuit Court of Jackson County denying his petition for a writ of mandamus. Chastain seeks a writ ordering election authorities to include a space for write-in candidates for Mayor on the ballot to be used in Kansas City's March 22, 2011 general election. Because the general election is imminent, we announced our affirmance of the circuit court's Judgment following oral argument on Chastain's appeal on March 17, 2011. This opinion explains the reasons for our disposition.

### Factual Background

According to Chastain's petition, he desires to run for Mayor of Kansas City as a write-in candidate. He alleges that he was informed by the director of the Kansas City Board of Election Commissioners in late November 2010 that he could not run as a write-in candidate in the primary election to be held on February 22, 2011, but could only run as a write-in candidate in the March 22 general election. Chastain alleges that in late November 2010 he

publicly announced his intention to run as a write-in candidate in the general election, and submitted a Write-in Candidate Declaration Form to the Board of Election Commissioners for this purpose on January 11, 2011.

Chastain alleges that, on or about February 10, 2011, Kansas City's City Attorney issued a legal opinion stating that, under the City's Charter, Chastain could only run as a write-in candidate for mayor in the primary election, not in the general election. An attorney for the Board of Election Commissioners informed Chastain on February 11, 2011, that, "consistent with the City Attorney's interpretation of the City Charter, we do not anticipate that there will be a write-in candidate line on the general election ballot." Because no space for write-in candidates would appear on the general election ballot, the letter also advised Chastain that "the Kansas City Board of Election Commissioners' understanding is that the Write–In Candidate Declaration Form for the office of Mayor of Kansas City, Missouri that you submitted for the March 22, 2011 general election will act as your write-in declaration for the upcoming primary election."

In response, Chastain filed this lawsuit on February 24, 2011.[1] The petition alleges that, due to the City Attorney's opinion and the election authorities' response to that opinion, "voters will have no official space to write in candidate Chastain's name ... or any other write-in candidate ... on the general ballot." (Ellipsis in original.) Chastain's petition also alleges that City officials have "concoct[ed] shifting plots aimed at sabotaging candidate Clay Chastain's run for Mayor," including: making public statements questioning whether he satisfied residency requirements; abandoning the practice from prior general elections of including a write-in line on the ballot for mayor; and delaying the announcement that Chastain could only run in the primary election until shortly before the primary election itself, making it infeasible for him to mount an effective primary-election campaign.

The petition contends that § 605 of the City Charter, on which the City Attorney's opinion letter relies, "is ambiguous because it is susceptible to more than one interpretation" with respect to the permissibility of providing a space for write-in mayoral candidates on the general election ballot. The petition continues:

> [S]ince the City Charter does not address provisions for write-in candidates in the general election the law governing that part of the election process reverts back to state law ... which does provide a provision for write-in candidates on a general ballot ... as is clearly defined in Sec. 601 of the Charter itself which states: "All elections provided by the Charter, whether primary elections, elections for choice of officials, or elections for submission of questions to the voters, shall be conducted by election authorities prescribed by law; **and the provisions of the election laws of the state shall apply to such elections, except as provision is otherwise made by the Charter or ordinance.**"

What's more, precedent also favors Petitioner's interpretation of Sec. 605 of the Charter since previous Kansas City gen-

---

1. In addition to the City Clerk of Kansas City, the petition names as respondents the Kansas City Board of Election Commissioners, the Platte County Board of Election Commissioners, and the Clay County Board of Election Commissioners. These respondents have taken no position on the merits of Chastain's claims, although they advised the circuit court and this Court of the time and logistical constraints surrounding their preparations for the general election.

eral election ballots have contained write-in lines for write-in candidates including the 2007 general election between the two named finalist candidates, Mark Funkhouser and Alvin Brooks.

(Emphasis and ellipses in original.)

Chastain's petition asks that the respondents be ordered "to place provisions for write-in candidates on the March 22, 2011 Kansas City, Missouri general election ballot." More particularly:

Chastain should be entitled to have a "Write-in_____" line at the bottom of the list of two named Mayoral candidates on the March 22, 2011 general ballot because not only has a precedent for that provision already been established in previous Kansas City general elections via state law, but also because the City Charter does not expressly prohibit write-in candidates from running in a general election.

The City Clerk filed her Answer to Chastain's petition on March 3, 2011. Besides responding to the allegations of Chastain's petition, the Clerk's Answer also asserted two affirmative defenses: (1) that mandamus was not an appropriate remedy given Chastain's own allegation that § 605 of the City Charter is ambiguous; and (2) that Chastain lacks standing because he is not a qualified write-in candidate because he fails to satisfy the residency requirements of § 204(d)(1) of the Charter and article VII, § 8 of the Missouri Constitution, and does not have the history of payment of city and county taxes required by the Charter.

The City Clerk also filed Suggestions in Opposition to Chastain's request for a writ of mandamus on March 3. In her suggestions the Clerk argued that Chastain had in fact run as a write-in candidate in the February 22 primary election, and that he should not be permitted to run as a write-in candidate again:

In this case, [Chastain] does not deny that he was told that he could only run as a write-in candidate in the primary election. He acknowledges that he was told by the Kansas City Election Board in a letter dated February 11, 2011, that his written declaration "will act as your write-in declaration for the upcoming primary election." At no time did he seek to withdraw his declaration for the primary election. Rather, he ran as a write in candidate in the primary, and received less than 100 votes. Because he was not one of the top two vote-getters in the primary election, he is not qualified to appear on the general election ballot.

... The petition does not seek to "execute" [Chastain's] right to run as a write-in candidate—he already had that opportunity in the primary election and took advantage of it.

The circuit court held a hearing on Chastain's petition on March 3, 2011, at which the court heard argument from Chastain and from the City Clerk, and also heard testimony from Chastain concerning his eligibility to run as a write-in candidate. The court issued its Judgment denying Chastain relief the next day. The Judgment first concludes that a writ of mandamus is not the appropriate remedy to interpret § 605 of the City Charter, which Chastain's petition alleges is ambiguous; instead, "[t]he proper mechanism available to adjudicate the meaning of the City Charter is a declaratory judgment."

"Assuming *arguendo* that a Writ of Mandamus is the proper remedy," the Judgment concludes that "Petitioner's application still fails." After quoting the language of § 605 of the Charter specifying when the name of a primary write-in candidate may be placed on the general election ballot, the Judgment continues:

It is uncontested by the parties that Mr. Chastain was allowed to run as a write-in candidate in the primary election per his request. There was no evidence adduced at the time of the hearing demonstrating that Mr. Chastain received the requisite number of votes pursuant to the City Charter to be considered a successful candidate for purposes of proceeding as a candidate to the general election. There is nothing in the plain language of the ordinance that contemplates that an unsuccessful primary election candidate may then advance to the general election as a write-in candidate. An interpretation to the contrary would lead to a result whereby any unsuccessful candidate in the primary would be able to run as a write-in candidate in the general election; thus, negating the purpose of holding a primary election. There is nothing in the language of the City Charter that leads this Court to believe that such a result was contemplated in the drafting and passage of Section 605.

█ Given these conclusions, the circuit court did not resolve the City Clerk's claim that Chastain lacked standing because he did not meet the residency and tax-payment qualifications to run as a write-in candidate.

Chastain now appeals.

**Appellate Jurisdiction**

█ Generally, when the circuit court denies a petition for writ of mandamus, the petitioner's proper course of action is not to appeal the denial but to file the writ in a higher court. However, when the circuit court denies a petition for writ of mandamus following an answer or motion directed to the merits of the controversy and, in doing so, determines a question of fact or law, we treat the court's ruling as final and appealable. *Stone v. Mo. Dep't of Corr.*, 313 S.W.3d 158, 160 (Mo.App. W.D.2010) (citations omitted); *see also State ex rel. St. Joseph Sch. Dist. v. Mo. Dep't of Elem. & Secondary Educ.*, 307 S.W.3d 209, 212 n. 3 (Mo. App. W.D.2010); *Atteberry v. Mo. Bd. of Prob. & Parole*, 193 S.W.3d 444, 445–46 (Mo.App. W.D.2006). Here, the City Clerk answered Chastain's petition, the trial court heard evidence, and the court issued a judgment rejecting Chastain's claims on the merits. We have jurisdiction over Chastain's appeal.[2]

**Standard of Review**

█ " 'Generally, mandamus is reviewed on appeal as any other non-jury civil matter.' " *Cox Health Sys. v. Div. of Workers' Comp.*, 190 S.W.3d 623, 626 (Mo. App. W.D.2006) (citation omitted). Accordingly, "we will affirm the circuit court's denial of [Chastain]'s petition for writ of mandamus unless we find that it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Stone*, 313 S.W.3d at 160. "[W]e review questions of law, including questions of statutory interpretation, *de novo.*" *St. Joseph Sch. Dist.*, 307 S.W.3d at 212; *see also Cox Health Sys.*, 190 S.W.3d at 626.

---

**2.** The City Clerk has filed a motion to dismiss Chastain's appeal in reliance on our decision in *State ex rel. Townsend v. Spino*, No. WD72524, 2010 WL 2483304 (Mo.App. W.D. June 22, 2010). The Missouri Supreme Court subsequently granted transfer in *Townsend*, however, No. SC91094 (Sept. 21, 2010), which had the effect of vacating our decision.

*State v. Norman*, 380 S.W.2d 406, 407 (Mo. banc 1964); *State v. Abdelmalik*, 273 S.W.3d 61, 65 (Mo.App. W.D.2008). While the Supreme Court ultimately dismissed Townsend's appeal as moot, this did not have the effect of reinstating our decision. The motion to dismiss is denied.

"[T]he judgment will be upheld on any reasonable theory supported by the evidence." *State ex rel. Thomas v. Neeley*, 128 S.W.3d 920, 924 (Mo.App. S.D.2004); *State ex rel. Cravens v. Nixon*, 234 S.W.3d 442, 446 (Mo.App. W.D.2007).

## Analysis

Chastain's opening Brief contains a single Point Relied On, which argues that the trial court concluded that he had run as an unsuccessful candidate in the primary election when no evidence was presented to the court on this issue, and that the court therefore erred in ruling that "there is nothing in the plain language of the ordinance [§ 605 of the City Charter] that contemplates that an unsuccessful primary election candidate may then advance to the general election as a write-in candidate." We have determined that the Judgment must be affirmed for reasons unrelated to the Point Chastain seeks to raise.[3]

 Notably, Chastain's Brief fails to even acknowledge, much less challenge, the circuit court's first stated basis for denying him relief: that a writ of mandamus is not the appropriate mechanism to interpret what Chastain concedes is an ambiguous Charter provision. Chastain's failure to challenge each and every ground on which the circuit court's Judgment depends compels affirmance of the trial court's decision in and of itself. In *City of Peculiar v. Hunt Martin Materials, LLC*, 274 S.W.3d 588 (Mo.App. W.D.2009), the appellants challenged only two of the five

grounds on which the circuit court had relied to deny their claims. We affirmed based on this consideration alone, explaining:

> To reverse the circuit court's judgment, ... [appellants] would necessarily have to establish that all of the reasons that the circuit court articulated in its judgment were wrong. This is because, even if we agreed with [appellants] that the circuit court erred in making th[e] two conclusions [which they challenge], we would have no choice but to presume, in the absence of arguments to the contrary, that the circuit court's other three reasons for denying their petitions were correct. Alleged errors by the trial court must be prejudicial and affect the merits of the action. Rule 84.13(b). Thus, by failing to assert that all of the circuit court's grounds were incorrect, [appellants] have failed to carry their burden on appeal of establishing that the circuit court erred in denying their petition.

*Id.* at 591 (other citations omitted).[4]

 Quite apart from the gaps in his appellate arguments, however, Chastain has shown no basis for reversal. Issuance of a writ of mandamus is only justified where some legal authority *requires* an official to perform a particular act in particular circumstances.

> The purpose of the extraordinary writ of mandamus is to compel the performance of a ministerial duty that one charged with the duty has refused to

---

3. Given that this case was argued on March 17, 2011, and concerns the content of ballots to be used in a general election to be held on March 22, there are serious questions whether this Court would have had the ability to afford Chastain any meaningful relief, even if we had found merit in his claims. The potential logistical difficulties were highlighted in a letter submitted to this Court by the Kansas City Board of Election Commissioners. Giv-

en that affirmance is required for the reasons stated in the text, however, we need not further address these issues.

4. Although Chastain is self-represented, he is subject to the same briefing standards as represented parties. *See, e.g., Studt v. Fastenal Co.*, 326 S.W.3d 507, 507–08 (Mo.App. E.D. 2010).

perform. The writ can only be issued to compel a party to act when it was his duty to act without it. It confers upon the party against whom it may be issued no new authority, and from its very nature can confer none. A litigant asking relief by mandamus must allege and prove that he has a clear, unequivocal, specific right to a thing claimed. He must show himself possessed of a clear and legal right to the remedy. Mandamus does not issue except in cases where the ministerial duty sought to be coerced is definite, arising under conditions admitted or proved and imposed by law.

*Furlong Cos. v. City of Kansas City*, 189 S.W.3d 157, 165–66 (Mo. banc 2006) (citations omitted).

The purpose of mandamus is to require the performance of a duty already defined by the law. Thus, mandamus enforces existing rights, but may not be used to establish new rights. Whether a petitioner's right to mandamus is clearly established and presently existing is determined by examining the statute or ordinance under which petitioner claims the right.

*St. Joseph Sch. Dist.*, 307 S.W.3d at 213 (citation omitted). "[M]andamus cannot be used to control the judgment or discretion of a public official." *Cox Health Sys.*, 190 S.W.3d at 627 (citation and internal quotation marks omitted)

Here, Chastain has not identified any source of legal authority that requires election authorities to include a line for write-in candidates on the March 22 general election ballot. The bulk of the parties' arguments, both in this Court and in the

circuit court, have focused on the meaning and effect of § 605(a) of the Kansas City Charter, which provides:

**Sec. 605. Results of elections.**

(a) *Primary election.*

(1) *General.* The two candidates for Mayor, the two candidates for at-large members of the Council, and the two candidates for district Council members, who receive the highest number of votes in the primary election for each office, respectively, will be placed on the general election ballot. As soon as determined, the City Clerk will provide the required information to the election authorities for the general election.

(2) *Write-in candidates.* If one or both of the two candidates receiving the highest number of votes is a write-in candidate, then that candidate must receive a total number of votes equal to or in excess of the number of nominating signatures required for that office to qualify for the regular election ballot.

(3) *Death, withdrawal, disqualification, failure to meet minimum write-in requirements.* In case of death, withdrawal or disqualification of any candidate entitled to have his name printed on the ballot at the regular municipal election, or any write-in candidate who does not receive the minimum number of votes required, the candidate receiving the next highest number of votes at the primary election will be placed on the general election ballot, if they are eligible.[5]

---

**5.** Notably, the quoted provisions of § 605(a) are the only references in Article VI of the Kansas City Charter to write-in candidates. In particular, there is no provision in Article VI which addresses how write-in candidates will be accommodated on primary election ballots, although the plain implication of § 605(a) is that write-in candidates may receive votes during primary elections.

The City Clerk has concluded, based on the advice of the City Attorney, that § 605(a) provides, by negative implication, that write-in candidates may *only* participate in primary elections, and may only appear on the general election ballot as named candidates if they are one of the two highest vote-getters, and meet the requirements of § 605(a)(2). The circuit court generally agreed with this interpretation, at least in the circumstance where a write-in candidate had participated, unsuccessfully, in the primary election. Chastain, on the other hand, argues that § 605(a) does not prohibit a space for write-in candidates from appearing on Kansas City's general election ballots.

But even if Chastain is correct that § 605(a) does not *prohibit* a line for write-in candidates from appearing on general election ballots, this would not entitle him to mandamus relief. It is not enough to show that an official is *not prohibited* from taking the action the petitioner desires. Instead, the petitioner must show that "it was [the official's] *duty* to act" as the petitioner wishes, *Furlong Cos.,* 189 S.W.3d at 166 (emphasis added); in other words, the petitioner must show that the law *required* the official to act in a particular way. Even if § 605(a) *allowed* election authorities to include a write-in line on the March 22 ballot, this is a far cry from showing that the Charter *required* them to do so.

■■■ Besides § 605 of the Charter, Chastain has made general reference to two other possible sources of the legal duty he seeks to enforce.[6] First, he points to the fact that the general election ballots for Mayor in multiple prior elections, including those held in 1999, 2003, and 2007, each contained a line for write-in candi-

dates. But the fact that an official has previously acted in a particular way, without more, does not establish that the official has a *legally enforceable duty* to act in that same way in the future. The fact that a write-in line appeared on prior general election ballots could be explained by the fact that election authorities have *discretionary authority* to include such a space on the ballot, or that they had never previously examined their legal right or obligation to do so. The so-called "precedent" of prior ballots does not by itself establish a legal duty to continue to include a write-in line on all general election ballots forevermore.

Finally, Chastain's petition makes a general reference to "state law." As Chastain correctly points out, § 601 of the Kansas City Charter provides that state election laws are generally applicable to Kansas City elections, unless otherwise provided by the Charter or ordinance:

### Sec. 601. General laws to apply.

All elections provided for by this Charter, whether primary elections, elections for the choice of officials, or elections for the submission of questions to the voters, shall be conducted by the election authorities prescribed by law; and the provisions of the election laws of the state shall apply to all such elections, except as provision is otherwise made by this Charter or ordinance.

However, while Chastain's petition makes a general reference to "state law" as a source of respondents' obligation to include a write-in line on the March 22 ballot, he has failed to identify, either in the trial court or in this Court, any specific state law which requires a separate write-in line to appear on general election ballots.[7]

---

6. Chastain makes no federal or state constitutional claims.

7. Notably, only the City Clerk cited specific provisions of the state election laws in the

Since Chastain has failed to provide legal authority or argument in support of his contention, we need not, and do not, decide whether state law requires the placement of a write-in line on Kansas City's general election ballots. It was Chastain's burden to establish his right to mandamus relief. *Furlong Cos.*, 189 S.W.3d at 165–66 ("A litigant asking relief by mandamus must allege and prove that he has a clear, unequivocal, specific right to a thing claimed."). It is not the role of the circuit court, or of this Court, to act as an advocate for Chastain, and develop a legal argument he has failed to adequately raise. Chastain's vague reference to "state law" cannot establish his right to mandamus relief, where he fails to make any reference to specific state statutes or regulations which might support his claim in the circumstances of this case.[8]

### Conclusion

In light of Chastain's failure to challenge and rebut all grounds upon which the circuit court's Judgment was based, and his failure to identify any specific legal grounds which establish a ministerial duty enforceable by mandamus, the Judgment is affirmed.

All concur.

---

trial court or in this Court. One of the provisions the Clerk cited, § 115.439, RSMo, suggests that, at least with respect to paper ballots, a separate write-in line is merely *one permissible means* by which voters can express their preference for a write-in candidate.

8. We also note that, even if Chastain were victorious on appeal, before a writ of mandamus could issue the circuit court or this Court would be required to address the City's affirmative defense concerning Chastain's compliance with the residency requirements of the City Charter and the Missouri Constitution. It appears from the existing record that Chastain may have difficulty satisfying these requirements. In the circuit court, Chastain testified that he established residence in Virginia (where his wife and young daughter permanently reside) in 2005, but returned to Kansas City in January 2011. Chastain acknowledged that he continues to spend the majority of his time with his immediate family in Virginia, but argued that he currently maintains "dual residence," and that the City Charter does not require that his "primary residence" be in Kansas City. In *Brooks v. Fletcher (In re Contest of the Primary Election Candidacy of Michael Fletcher)*, 337 S.W.3d 137, (Mo.App. W.D.2011), however, we explained that, for purposes of the relevant election laws, " '[a] person can have but one domicile, which, when once established, continues until he renounces it and takes up another in its stead. In order to effectuate a change it is necessary that there shall be actual personal presence in the new place and also the present intention to remain there, either permanently or for an indefinite time, without any fixed or certain purpose to return to the former place of abode.' " *Id.* at 142, (quoting *State ex rel. King v. Walsh*, 484 S.W.2d 641, 645 (Mo. banc 1972) (emphasis added by *Brooks* )).